UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH A. DE SOUZA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PULTE HOME CORPORATION, DEL WEBB HOMES; PULTE MORTGAGE; DEL WEBB HOME FINANCE; DEL WEBB MORTGAGE CORPORATION; and DOES 1-1,000, inclusive,

Defendants.

__________________________________/

NO. CIV. S-08-337 LKK/GGH

O R D E R

Plaintiff is a homeowner who has sued defendants Pulte Home Corporation, Pulte Homes, Inc., Del Webb Homes, Del Webb California Corp., and Marquette Title Insurance Co., alleging various unlawful conduct surrounding the sale of the home. Plaintiff asserts his causes of action on behalf of himself and a putative class. Pending before the court are two motions brought by the defendants. The defendants first move to stay or dismiss the action so that the

parties may arbitrate their dispute. In the alternative, the defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the parties' papers and after oral argument, the court denies without prejudice the motion to stay or dismiss in favor of arbitration and grants in part and denies in part, without prejudice, the motion to dismiss.

## I. BACKGROUND AND FACTS

### A. Allegations of the Complaint[1]

Plaintiff has brought suit on behalf of himself and others[2] who purchased homes from Pulte Home Corporation, Pulte Homes, Inc., Del Webb Homes, Del Webb California Corp. ("Builder Defendants") and purchased title insurance through a third party not named as a defendant here. The title insurance was reinsured through Marquette Title Insurance Company ("Marquette"). The crux of plaintiff's complaint is that the Builder Defendants had an unlawful fee splitting arrangement with Marquette.

Plaintiff's purchase closed on August 16, 2004. He alleges that the Builder Defendants had created and continued to control Marquette, a reinsurance company. The Builder Defendants referred purchasers to the title insurer, who then reinsured through Marquette. Marquette received part of the title premium, which plaintiff characterizes as a reinsurance fee. Compl. ¶ 27. These

[1]Unless otherwise specified, all allegations derive from plaintiff's First Amended Complaint and are taken as true for the purposes of these motions only.

[2]Plaintiff has not yet moved for class certification.

fees allegedly exceeded their value and constituted unlawful kickbacks. According to plaintiff, the Builder Defendants did not disclose this arrangement to him nor did they disclose that Marquette was their "captive" reinsurer. The Builder Defendants only disclosed that Marquette was a subsidiary of theirs, that they had a "business relationship" with the primary title insurer, and that they may derive financial benefit from their business relationship.

In May 2005, plaintiff and others received partial refunds of their title premiums, prompted by an investigation by the California Department of Insurance. The refunds were paid by the primary title insurer, not by the defendants. At the same time, the Department of Housing and Urban Development pursued a suit against the defendants, alleging that the fee-splitting arrangement violated the Real Estate Settlement Procedures Act (RESPA). Settlement was reached in October 2007.

Plaintiff alleges six causes of action: violation of RESPA, breach of contract, negligence, fraudulent concealment, unjust enrichment, and unfair business practices in violation of California Business and Professions Code § 17200 et seq. He seeks injunctive and declaratory relief and damages.

**B. The Arbitration Agreement**

The purchase agreement, including the signature page is fourteen pages long. Declaration of Paul D. Stevens In Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration and Dismiss or Stay This Action ("Stevens Decl."), Ex. 1 (copy of

the Purchase Agreement). Id. The first page contains almost no text, except for the following paragraph:

> This agreement contains a mandatory binding arbitration provision in accordance with the Federal Arbitration Act. By executing this agreement you agree that any dispute between us will be resolved by binding arbitration and you therefore waive your right to a jury trial. Please make sure that all provisions of this agreement are read and understood before signing. If you do not understand any provision, you should seek legal advice.

Id. at 1. (typeface altered from original all-caps). Plaintiff's initials appear below this paragraph.

Under "Pre-Closing Arbitration of Disputes," the agreement provides that if the buyer defaults on the purchase, the seller will demand that the escrow agent remit the buyer's earnest money deposit. If the buyer objects to this, the dispute will be settled by arbitration. Id. at 9. This section describes what rules the arbitrator will employ, that the arbitrator will be neutral and impartial, where arbitration will occur, what remedies will be available and who will bear the costs of arbitration. Id. The buyer and seller initialed the bottom of this page.

Under "Post-Closing Arbitration Of Disputes," the contract reads,

> a. Agreement to Arbitrate. . . . Except for disputes regarding liquidated damages as set forth above in the pre-closing arbitration of disputes provision, any controversy, claim, cause of action, liability or dispute ("claims") arising out of or in any way related to this agreement, your property, home, community, death, bodily injury and/or defective design or construction, including without limitation, claims for breach of contract, negligence, nuisance, statutory violation, misrepresentation, and/or fraud, shall be resolved by binding arbitration pursuant to the Federal

Arbitration Act (Title 9 of the United States Code).

Id. at 10 (typeface altered from original all-caps). The next paragraph states that the American Arbitration Association's Construction Industry Arbitration Rules and the Supplemental Procedures for Consumer / Residential Construction Disputes would apply. Id. The following paragraph advises that any applicable federal or state laws that require either party to take certain steps before filing suit in court also must be completed before commencing arbitration. Id. This includes, "for example," those described in California Civil Code § 895 (describing prelitigation procedure for construction disputes). Id.

The following section provides that the dispute will be determined by a neutral arbitrator, selected in accordance with California Code of Civil Procedure §§ 1297.121 and 1297.124. Id. The agreement then provides that "the parties may join other parties as provided in the rules except that [the buyer] may not join your claims against [the seller] with the claims of any other homeowners." Id. at 11. The contract includes additional provisions describing the location of arbitration, remedies available, confidentiality of the award, fee payment, application to small claims, statue of limitations, resolution of rules conflicts, applicability to disputes arising after the closing or the termination of the agreement, and severability of the provisions. Id. at 11-12. All of the post-closing arbitration of disputes provisions are in capital letters and span approximately two pages. Both the buyer and seller initialed the bottom of each page

containing these provisions.

> At the end of the section, there is a paragraphwhich reads: Notice: By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the "arbitration of disputes" provision decided by neutral arbitration as provided by California law and the Federal Arbitration Act and you are giving up any rights you might possess to have the dispute litigated in a court or jury trial. By initialing in the space below you are giving up your judicial rights to discovery and appeal, unless such rights are specifically included in the "arbitration of disputes" provision. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the California Code of Civil Procedure or the Federal Arbitration Act. Your agreement to this arbitration provision is voluntary.

Id. at 12 (typeface altered from original all-caps). The buyer and seller initialed below this paragraph. The contract was signed and dated by the plaintiff and by an agent of Del Webb Cal. Id. at 14.

The plaintiff has tendered a declaration from attorney Paul Stevens that the Purchase Agreement was "included in 199 pages of documents, which together comprise the documents relating to the transaction between Plaintiff and Defendants." Stevens Decl. ¶ 6. This figure includes the "sales file, loan file and closing documents." Id. at ¶ 5.

## II. STANDARDS

### A. Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded"

allegations of the complaint. See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court may not dismiss the complaint if there is a reasonably founded hope that the plaintiff may show a set of facts consistent with the allegations. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1967-69 (2007). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

**B. Standard for Motion to Stay or Dismiss Pending Arbitration**

When confronted with a motion to stay or dismiss pending arbitration, the court must first determine if a valid arbitration agreement bars the plaintiffs claims. Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988). If that is the case, the court has discretion to either stay or dismiss the case pending arbitration. Id.; 9 U.S.C. § 3.

**III. ANALYSIS**

The defendants move to stay or dismiss the suit pending arbitration, on the grounds that the plaintiff's purchase contract requires arbitration of the claims. In the alternative, they move to dismiss the complaint for failing to state a claim upon which relief may be granted. As explained below, the court denies the motion to dismiss or stay in favor of arbitration without prejudice. The court grants in part the motion to dismiss under Rule 12(b)(6).

As a threshold matter, the court must determine whether the arbitration agreement is enforceable. The Federal Arbitration Act (FAA) governs arbitration agreements relating to interstate commerce. 9 U.S.C. § 2. The purpose of the FAA is said to be to "place such agreements upon the same footing as other contracts". Federal courts apply state contract law in determining whether an arbitration agreement falls within the ambit of the FAA. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University, 489 U.S. 468, 474-75 (1989) (internal citations omitted); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003).

Here, it appears that the agreement involved interstate commerce; accordingly, the Federal Arbitration Act applies to the parties' agreement. See Stevens Decl., Ex. 1 at 10 (averring that the purchase of the home involved interstate commerce with "trades and suppliers outside California").As explained below, despite plaintiff's contention to the contrary, the agreement's reference

to California statutes does not in itself render the FAA inapplicable. Volt Information Sciences v. Bd. of Trs., 489 U.S. 468 (1989).

In Volt the court held that the FAA does not preempt contracts in which the parties explicitly agreed to be bound by state arbitration law. The Volt agreement provided that arbitration would proceed in accordance with California Code of Civil Procedure § 1281.2, which is the California counterpart to 9 U.S.C. § 3. Id. at 471 n. 2. The contract also specified that it would be "governed by the law of the place where the project [was] located [California]." Id. at 472 (internal citations omitted).

Here there is no similar expression that the parties intended California's arbitration law, not the FAA, to apply. Unlike Volt, the agreement here is replete with provisions that the FAA applies. Stevens Decl., Ex. 1 at 1, 10, 12. The references to California law here do not provide that arbitration will only be ordered as California law requires. Rather the agreement specifies that certain aspects of the arbitration procedures borrow from California statutes. See id. at 10 (application of California pre-litigation procedures and standards for selection of arbitrator). Finally, the agreement's reference to the applicability of AAA rules does not alone indicate that the parties intended to apply state arbitration law, rather than the FAA, to the agreement. Cf. Volt, 489 U.S. at 475 (by incorporating Cal. Code Civ. Proc. § 1281.2, the parties had agreed which disputes will be sent to arbitration). In sum it seems abundantly clear that the FAA

applies.

Next, plaintiff contends that the arbitration agreement contained in his Purchase Agreement is unenforceable because it is unconscionable. The court cannot agree.

An arbitration agreement that falls within the ambit of the FAA is unenforceable if it is unconscionable under state law. Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 782 (9th Cir. 2002). A contract is unconscionable where there are elements of both procedural and substantive unconscionability. These elements are considered on a sliding scale, so that each element need not be present to the same degree. Id. at 783; Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).

**A. Procedural Unconscionability**

Oppression and surprise are the hallmarks of procedural unconscionability. Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir. 2003) (applying California law). Oppression exists where one party has a weaker bargaining position, precluding him from a meaningful opportunity to negotiate the terms of the contract. Id. (citing Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997)); Pardee Construction Co. v. Superior Court, 100 Cal. App. 4th 1081, 1087 (2002). Surprise exists where the terms at issue are "hidden in a prolix printed form drafted by the party seeking to enforce the terms." A & M Produce Co. v. FMC Corp., 135 Cal. App. 3rd 473, 486 (1982); see also Thompson v Toll Dublin, LLC, 165 Cal. App. 4th 1360 (2008) (finding surprise element of procedural unconscionability met where arbitration agreement was

included within 800 pages of documents). Surprise also exists where the drafter of the agreement incorporates by reference provisions, but makes it difficult for the other party to obtain the contents of those provisions. Fitz v. NCR Corp., 118 Cal. App. 4th 702, 721 (2004) (surprise present where the arbitration agreement did not contain provisions describing the rules and scope of the arbitration, but directed the party to obtain a copy through management or the human resources department).

Here, there is virtually no evidence of the procedural unconscionability. Plaintiff in his opposition brief argues that he "had no real meaningful choice with respect to accepting the arbitration provision" and that defendants "set the terms of the deal, in a take-it-or-leave-it fashion, and did not give Plaintiff any real opportunity to negotiate," Opp'n at 8, 14. Of course argument is not evidence and plaintiff presents no evidence, in the form of declarations or otherwise, to substantiate these assertions. Accordingly, the court cannot conclude that the arbitration agreement was oppressive. See Trend Homes, Inc. v. Superior Court, 131 Cal. App. 4th 950, 958 (2005) (finding no oppression where there was "no evidence that [plaintiff home purchasers] attempted to negotiate the provision and were rebuffed, or that they had no meaningful choice but to agree to the provision.").

Plaintiff's evidence of surprise is equally unconvincing . A review of the Purchase Agreement does not suggest that the arbitration agreement was hidden in the document. The Agreement is

thirteen pages long, excluding the signature page, and three of the pages exclusively discuss the arbitration agreement. Stevens Decl., Ex. 1 at 1, 10-12. Unlike the other provisions of the contract, the arbitration provisions are written in all capital letters. Id. The first page of the Agreement has no text except a paragraph stating that the Agreement contains mandatory arbitration provisions, which the plaintiff initialed. Id. at 1. In addition to initialing the bottom of every page, plaintiff also initialed an additional line just below the Post-Closing Arbitration of Disputes section, indicating that he read and understood the provision and agreed to submit disputes to arbitration. Id. at 12. Given the prominence of the arbitration provisions in the Agreement, it can hardly be said that they were "hidden" within the document.

Plaintiff indicates that the surprise element is met by the fact that the Purchase Agreement was only part of 199 pages of documents that "comprised the documents relating to the transaction between Plaintiffs and Defendants." Stevens Decl. ¶ 6. Nowhere, however, is there evidence that this number reflects the number of documents given to the plaintiff at the time he reviewed and signed the Purchase Agreement. Rather plaintiff's counsel's declaration establishes that there were 199 documents produced by defendants as "all documents relating to the transaction between Plaintiff and Defendants, including . . . the sales file, loan file and closing documents." Id. at Ex. 3. These documents may include those that would have been provided to or by plaintiff at various points in the process of purchasing the home. On the record made, the court

cannot agree with plaintiff that the evidence supports a finding that "Defendants obtained [his] consent [to the arbitration provisions] by bombarding Plaintiff with documents for signing during the purchase process." Opp'n at 8. Accordingly, there appears only minimal, if any, evidence of procedural unconscionability in the arbitration agreement.

**B. Substantive Unconscionability**

A contract is substantively unconscionable when its terms are so one-sided as to shock the conscience. Ingle, 328 F.3d at 1172; Kinney v. United HealthCare Serv., Inc., 70 Cal. App. 4th 1322, 1330 (Cal. Ct. App. 1999). An arbitration agreement is substantively unconscionable if it requires only one party to arbitrate or only included in its ambit the types of claims that only that party would be likely to bring. Armendariz, 24 Cal. 4th at 116-18; Kinney, 7 Cal. App. 4th at 1332; Stirlin, 51 Cal. App. 4th at 1536.

Here, the agreement does not appear so one-sided. The agreement provides that all disputes will be arbitrated, including pre-closing claims for liquidated damages that the defendants may have against the plaintiff. Stevens Decl., Ex. 1 at 8-9. Post-closing arbitration is also required for any dispute arising out of the transaction, not only claims for construction defects that only the buyer would bring. See Armendariz, 24 Cal. 4th at 116-18; Stirlin, 51 Cal. App. 4th at 1536.Rather, the agreement is explicit that all disputes will be arbitrated. Stevens Decl., Ex. at 1, 10, 12. In this way, it is distinguishable from Thompson, 165 Cal. App.

4th at 1373, where the court held that because the arbitration agreement was described only in terms of Title 7 of the California Civil Code, which deals exclusively with construction defects, it would be unforeseeable to the home buyer that the arbitration provisions applied to other claims, as well. Here, the provisions of the arbitration agreement do not appear misleading or ambiguous, regardless of which party raised them.

Plaintiff contends that the class action waiver in the arbitration agreement is substantively unconscionable. California courts, however, have only held such waivers unconscionable in narrow circumstances that the plaintiff has not shown are applicable here.

Preliminarily, class action waivers are not per se unconscionable. Shroyer v. New Singular Wireless Servs., Inc., 498 F.3d 976, 983 (9th Cir. 2007) (applying California law); Discover Bank v. Superior Court, 36 Cal. 4th 148, 162 (2005). California courts have found these waivers unconscionable where they are part of consumer adhesion contracts, when the disputes between the buyers and sellers would involve very small amounts of damages, and when the seller is alleged to have carried out a scheme to deliberately cheat large numbers of consumers out of small amounts of money. Discover Bank, 36 Cal. 4th at 162. This rule is intended to encompass consumer purchase agreements, such as for credit card or telephone services, where the seller includes small "fees" to be paid by the consumer, which the consumer may not notice and would be too small as to litigate. See Shroyer, 498 F.3d at 983-85.

These fees are generally one thousand dollars or less. See id. (collecting cases); see also Omstead v. Dell, Inc., 533 F. Supp. 2d 1012, 1033, 1037 (holding this rule inapplicable to claims arising out of sale of "high-end electronics," because the amounts in controversy were not so trivial as to discourage potential plaintiffs from bringing suit).

Plaintiff has not shown that this rule applies to the instant case. First, plaintiff does not indicate in either his complaint or otherwise what the amount in controversy is for his own claim or the typical claim of a class member. Given the nature of the claim, a proposition that the amounts are small is not self evident. Moreover, the plaintiff has not indicated how many consumers are alleged to comprise the plaintiff class, further rendering it unclear that the instant suit is of the type for which the courts have found class action waivers unconscionable. Cf. Omstead, 533 F. Supp. 2d at 1037 (the type of "scheme" covered by the Discover Bank rule "generally involves . . . [a] business entity engaged in a long-term service or customer relationship with consumers which has engaged in a deceptive practice designed to squeeze a few dollars out of each of its customers"). There has simply been an insufficient showing that the arbitration agreement, which appears valid on its face, is substantively unconscionable as a result of its class action waiver so as to be unenforceable.

**C. Applicability of Arbitration Agreement to Plaintiff's Claims**

The arbitration agreement applies to all of the plaintiff's causes of action, except his prayer for injunctive relief.

(Defendants acknowledge injunctive relief is not covered by the agreement. See Cruz, 30 Cal.4th at 316; Reply at 4.) The agreement affirms that it applies to "any controversy, claim, cause of action, liability or dispute . . . arising out of or in any way related to" the Purchase Agreement. Stevens Decl., Ex. 1 at 10. This expressly includes claims for "breach of contract, . . . negligence, . . . statutory violation, misrepresentation, and/or fraud." Id. This appears to plainly encompass plaintiff's causes of action, which all arise from the allegedly unlawful arrangement between the Builder Defendants and Marquette and the defendants' alleged failure to disclose the agreement to plaintiff. In similar contexts, other courts have held that these types of claims are arbitrable. See, e.g., Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1311 (11th Cir. 2005) (RESPA claims arbitrable); Gray v. Conseco, Inc., No. CV 00-322, 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000) (same); Cruz v. PacifiCare Health Systems, Inc., 30 Cal.4th 303, 316 (2003) (claims under the UCL for disgorgement and restitution are arbitrable). In this circumstance, it is appropriate to require the parties to arbitrate all the claims other than plaintiff's claim under the UCL for which he seeks injunctive relief.

Finally, although only Del Webb Cal. was a party to the arbitration agreement, the other defendants may enforce it. The principle of equitable estoppel requires that "a signatory to [an] agreement containing an arbitration clause may be compelled to arbitrate its claims against a nonsignatory when the relevant

causes of action rely on and presume the existence of the contract." Boucher v. Alliance Title Co., Inc., 127 Cal. App. 4th 262, 269 (2005) (collecting cases). Moreover, when the plaintiff alleges causes of action against signatories and nonsignatories and those causes of action are intertwined with the agreement signed by the plaintiff, he is estopped from litigating against the nonsignatories in lieu of arbitration. Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006); Thompson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995). Accordingly, all of plaintiff's claims against all defendants should proceed to arbitration, except his request for injunctive relief under the UCL.

**D. Special Considerations Because Complaint is Pled as a Class Action Suit**

Although the arbitration agreement is enforceable as to all noninjunctive claims, the fact that plaintiff has pled his complaint as a class action prevents the court from dismissing or staying the case in favor of arbitration now.

Class action claims are arbitrable under California law. Discover Bank, 36 Cal.4th at 157; Sanders v. Kinko's, Inc., 99 Cal. App. 4th 1106, 1109 (2002); Keating v. Superior Court, 31 Cal.3d 584, 608-14 (1982), rev'd in part by Southland Corp. v. Keating, 465 U.S. (1984). Moreover, although the FAA requires enforcement of valid arbitration agreements, its purpose is not subverted by the court staying arbitration in order to address procedural concerns. Sanders, 99 Cal. App. 4th at 1111-12.

Where the plaintiff has alleged claims on behalf of a class, courts that have found that it is proper to refrain from compelling arbitration until class certification issues have been resolved. See id. at 1109; Keating, 31 Cal.3d at 608. This allows the court to determine "whose claims are subject to arbitration under the FAA" and whether any differences in the class members' arbitration agreements warrant certification of subclasses. Sanders, 99 Cal. App. 4th at 1109.

In sum, before the court dismisses or stays the suit pending arbitration, it seems sensible to first determine whether the class should be certified. Based on that ruling, the court may then determine who must be compelled to participate in arbitration, including whether there may be a subclass whose disputes do not require arbitration.

The parties have briefly addressed in their papers whether the plaintiff may serve as a class representative, given that he has pled himself out of the first cause of action.[3] First, the parties dispute whether California or federal law governs the question of whether plaintiff may act as a class representative. It appears that under California law, a plaintiff may represent the class if his claims represent a "community of interest" with those of the

[3]At oral argument, plaintiff's counsel conceded that this claim was time barred as to Mr. De Souza. That the plaintiff is barred from obtaining relief on the first cause of action affects his other causes of action as well. For example, the plaintiff contends that his breach of contract claim relies in part on the theory that RESPA was integrated into the parties contract. Opp'n to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint at 12-13.

other class members, even if the named plaintiff's claims are time barred. LaLiberte v. Pacific Mercantile Bank, 147 Cal. App. 4th 1, 4-5 (2007). Defendants counter that neither federal nor California law permits a plaintiff who lacks standing to act as a class representative.

This issue has only been minimally briefed by the parties, so that the court is unable to determine their position. It seems appropriate to decide this question prior to dismissing or staying the case in favor of arbitration, so as to ensure that all class members' rights to bring suit are respected and to give the arbitrator clarity as to which and whose claims he or she is charged with resolving. See Sanders, 99 Cal. App. 4th at 1109; Keating, 31 Cal.3d at 608. The plaintiff is therefore ordered to bring a motion for class certification not later than sixty days from the date of this order. Upon resolution of that motion, defendants may renew the instant motion or move to compel arbitration.

**E. Motion to Dismiss Under Rule 12(b)(6)**

Because the arbitration agreement is enforceable, the court cannot rule on the defendants' motion to dismiss under Rule 12(b)(6), as the arbitrator will be charged with resolving all issues of fact and law necessary to resolve the dispute.[4] ATSA of

---

[4]The plaintiff has requested the court take judicial notice of several documents he has presented in support of his opposition to defendants' motion to dismiss. Although these documents are not necessary to the resolution of the motion, the court is required to take judicial notice of facts when requested by a party and the party has shown that the facts are not subject to reasonable

Cal., Inc. v. Continental Ins. Co., 702 F.2d 172, 175 (9th Cir. 1983). The plaintiff's claim for injunctive relief under the UCL may not be ordered to arbitration, so the court addresses defendants' motion to dismiss as to that claim only.

In his sixth cause of action, the plaintiff alleges that defendants violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, by acting in a way that was "unlawful, unfair, or fraudulent." Compl. ¶ 95. Plaintiff bases this claim in part on the defendants' alleged violations of California Financial Code § 50505 and other federal and state statutes, including RESPA. Although the plaintiff has pled himself out of the RESPA cause of action, and his counsel acknowledged that plaintiff's claim under RESPA is time-barred, this is not fatal to plaintiff's UCL claim. The California Supreme Court has held that

---

dispute. Fed. R. Evid. 201(d).

The plaintiff requests judicial notice of two items: excerpts of the fee schedule of First American Title Insurance Company and the Third Amended Complaint in Sjobring v. The First American Corp., et al., Los Angeles Superior Court Case No. BC 329482.

The court declines to take judicial notice of the excerpts of the fee schedule, as the accuracy of their contents is not readily determinable by the court. See Fed. R. Evid. 201(b). Because plaintiff has only presented portions of the schedule, the court cannot evaluate whether those portions accurately reflect the entire fee schedule and whether the excerpted schedule applies to plaintiff. The court has not been provided with the necessary information that would permit it to conclude that the facts regarding the fee schedule for which judicial notice is sought are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

The court takes judicial notice of the Sjobring Third Amended Complaint, as it is a matter of public record for which judicial notice is proper. Lee v. City of Los Angeles, 250 F.3d 668, 688-90 (9th Cir. 2001). In so doing, the court does not accept as true the allegations in that complaint. See id. at 688-90.

the UCL was drafted with expansive language so as to permit causes of action that would otherwise be time-barred. Cortez v. Purolater Air Filtration Prods. Co., 23 Cal.4th 163, 178-79. The UCL has a four year statute of limitations and permits a plaintiff to bring a claim for a defendant's violation of another statute. Id. Taken together, this indicates that the plaintiff is not bound by the limitations period in the underlying statute. Id. In other words, a plaintiff can bring a claim under the UCL for unlawful business practices even if he is barred from bringing a claim under the underlying statute on which he relies. As this appears to be the case here, the failure of plaintiff's RESPA claim does not affect the viability of his UCL claim.[5]

Plaintiff also alleges that defendants' conduct was an "unfair" business practice in violation of the UCL. Under the UCL, "unfair business practice" is defined broadly to include that which offends public policy or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Smith v. State Farm Mut. Ins. Co., 93 Cal. App. 4th 700, 718-19 (2001). It includes far more conduct than that which is unlawful. See id. Accordingly, plaintiff's allegations regarding the fee-splitting arrangement among the defendants appears sufficient to allege an unfair business practice in violation of the UCL.

Third, plaintiff alleges that defendants' conduct violated the

[5]Moreover, plaintiff alleges that defendants' conduct was unlawful for violating Cal. Fin. Code § 50505. This alone would suffice as grounds for plaintiff's allegations under the UCL that defendants committed "unlawful" conduct, even if RESPA did not.

UCL because it was fraudulent. The Ninth Circuit has held that, when brought in federal court, claims under the UCL based on fraud must meet Rule 9's pleading requirements. Vess, 317 F.3d 1106. Plaintiff's fraud claim does not meet this standard. A fraud claim must allege "the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Giegy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Defendants contend that plaintiff failed to allege who committed the fraud and where it occurred.

Plaintiff's complaint alleges that the fraud was committed by "representatives for defendants . . .: (i) Keneta S. McCaskey-Sanchez; and (ii) a person whose name, based on his or her signature, appears to be 'L. Wi.'" Plaintiff does not specify, however, for which defendants these individuals were the representatives, as he directs the cause of action against all defendants. This does not provide the defendants notice that is specific enough to permit them to defend against the claim. See Vess, 317 F.3d at 1106 (citations omitted).

Similarly, plaintiff does not adequately plead where the fraud occurred. In his complaint, he alleges that it occurred "at the location where the transactions took place," which was "in Placer County." Compl. ¶¶ 5, 82. In his opposition brief, he clarifies that this includes "numerous locations in Placer County, i.e., the location where escrow closed, the location of the property, and the

location of the defendants' offices." Opp. at 23. In accordance with the rule of the Circuit, these locations are required to have been pled in the complaint. Vess, 317 F.3d at 1106; Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).[6] Defendant's motion is granted as to plaintiff's sixth cause of action to the extent that it alleges that defendants' conduct violated the UCL because it was fraudulent. Plaintiff is granted leave to amend.

Finally, plaintiff alleges that he suffered damages as a result of the defendants' conduct. An element of the UCL is that plaintiff must show that the unlawful, unfair, or fraudulent business practices caused him a loss of money or property. Cal. Bus. & Prof. Code § 17204. Here, plaintiff alleges that he and the class members "were actually and proximately damaged from defendants' fraudulent concealment including, but not limited to, excess fees and premiums." Compl. ¶ 84. In other words, he alleges that the fee-sharing arrangement resulted in greater fees and premiums than he would otherwise have been required to pay. This suffices to allege that he suffered damages and is specific enough to give the defendants notice of the claim and the grounds upon which it rests. See Bell Atlantic, 127 S.Ct. at 1965 n. 3. Accordingly, defendants' motion is granted in part as to plaintiff's sixth cause of action, with leave to amend.

---

[6] This appears silly since it is apparent that, at least as to the seller, it is as aware of the locations of the transaction as the buyer. Since, however, the plaintiff must amend in any event, no harm is suffered by requiring adherence to the standard.

**IV. CONCLUSION**

For the reasons stated herein, the court orders as follows:

1. Defendants' motion to stay or dismiss (Doc. No. 33) is DENIED, without prejudice.
2. Plaintiff SHALL bring a motion for class certification not later than sixty (60) days from the date of this order.
3. Defendants' motion to dismiss (Doc. No. 35) is GRANTED in part and DENIED in part. Plaintiff is granted thirty days from the date of this order to amend the complaint.
4. Plaintiff's request for judicial notice (Doc. No. 54) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED: October 8, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT