1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9
STEWART A. DALIE,
10  individually and on
behalf of all others
11  similarly situated,

12                                  NO. CIV. S-08-337 LKK/GGH
          Plaintiff,
13
     v.
14                                       O R D E R
PULTE HOME CORPORATION,
15  DEL WEBB HOMES; PULTE
MORTGAGE; DEL WEBB HOME
16  FINANCE; DEL WEBB MORTGAGE
CORPORATION; and DOES 1-1,000,
17  inclusive,

18          Defendants.

19  _____/

20        Plaintiffs are homeowners who allegedly purchased homes from

21  defendants Pulte Home Corporation, Pulte Homes, Inc., Del Webb

22  Homes, and Del Webb California Corp., the title reinsurance for

23  which was allegedly provided by defendant Marquette Title Insurance

24  Company. Plaintiffs represent themselves and members of a putative

25  class in their claims against the defendants for violations of the

26  Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607,

                                1

and state law. Pending before the court is defendants' motion to strike the class allegations asserted in plaintiffs' Third Amended Complaint and to compel arbitration. The court resolves the motion on the papers and after oral argument.

## I. BACKGROUND

The court described the allegations of the plaintiffs in detail in its October 9, 2008 order. Briefly, plaintiffs allege that defendant Marquette Title Insurance Company acted as a "captive reinsurer" of the remaining defendants and that those defendants had an unlawful fee-splitting arrangement with Marquette.

This suit was removed to this court on February 13, 2008, with Joseph DeSouza as the sole named plaintiff as representative of a putative class. In June 2008, defendants moved to dismiss or stay the case pending arbitration. The court resolved that motion by order on October 9, 2008. In it, the court concluded that the contract between the plaintiff and Del Webb California contained a valid, enforceable arbitration agreement. As such, all of plaintiff's causes of action except his claim for injunctive relief were required to be arbitrated. However, because plaintiff had pled his claims as brought on behalf of a putative class, the court, in accordance with the approach taken by California courts, concluded that "before the court dismisses or stays the suit pending arbitration, it seems sensible to first determine whether the class should be certified. Based on that ruling, the court may then determine who must be compelled to participate in arbitration,

including whether or not there may be a subclass whose disputes do not require arbitration." Order, Oct. 9, 2008 at 18. The court further noted that it appeared that plaintiff DeSouza's RESPA claim was time-barred and therefore it was unclear as to whether he could serve as a class representative. This further demonstrated the need to resolve class certification issues prior to ordering the parties to arbitrate. Plaintiff was granted sixty days to bring a motion for class certification.

Based on the parties' representations at an October 14, 2008 status conference, plaintiff was granted an extension to March 1, 2009 to move for class certification. Order, Oct. 20, 2008, at 1. This deadline was continued again to June 1, 2009, upon the stipulation of the parties. Order, Jan. 6, 2009, at 1.

On December 11, 2008, plaintiff moved for leave to file an amended complaint for the purpose of substituting the named plaintiff. In the motion, plaintiff contended that De Souza could no longer continue as the named plaintiff "because of changed personal circumstances." Mot. for Leave to File a Third Amended Compl. at 1. Plaintiff argued, however, that no prejudice to defendants would result from the amendment because the proposed new named plaintiffs were members of the class alleged in the previous complaints. Id. at 1, 3. Plaintiff also asserted that the only other substantive change to the complaint would be deletion of an allegation that plaintiff received a partial refund from the primary title insurer. Id. at 3. "Therefore," plaintiff asserted, "Defendants will not have to change their analysis of the case or

defenses claimed . . . ." Reply in Support of Mot. for Leave to
File a Third Amended Compl. at 2.

The court granted the motion and plaintiff filed a Third
Amended Complaint on February 9, 2009. The named plaintiffs in it
are Stewart Dalie III, Reena Dalie, Charles Defrenzo, and Louise
Defrenzo.

Shortly thereafter, defendants filed the instant motion. In
opposition to the motion, plaintiffs have tendered evidence to
support their argument that the arbitration agreements they signed
were unconscionable and therefore should not be enforced.  In sum,
they have tendered the declarations of the four named plaintiffs,
in which they state that they were not experienced in home buying
at the time of their relevant home purchases, and that the purchase
agreements were pre-printed and the language in them could not be
negotiated. Declaration of Louise Defrenzo ("L. Defrenzo Decl.")
¶¶ 2-4; Declaration of Charles Defrenzo ("C. Defrenzo Decl.") ¶¶
3-4; Declaration of Stewart Dalie III ("S. Dalie Decl.") ¶¶ 11-13,
19; Declaration of Reena Dalie ("R. Dalie Decl.") ¶¶ 2-3. They also
declared that they did not recall the arbitration clauses being
called to their attention. L. Defrenzo Decl. ¶ 5; C. Defrenzo Decl.
¶ 5; S. Dalie Decl. ¶ 18; R. Dalie Decl. ¶ 4. Plaintiffs Charles
Defrenzo and Stewart Dalie have declared that they were asked to
"quickly" initial multiple places on the Purchase Agreement. C.
Defrenzo Decl. ¶ 6; S. Dalie Decl. ¶ 19. Plaintiff Stewart Dalie
declared that "there were many documents to sign [in the Purchase
Agreement] and, while I reviewed them quickly, I did not have the

opportunity to read them closely." S. Dalie Decl. ¶ 16. Finally, they have each declared that they would not go forward with arbitration due to the risk of having to pay the arbitrator's a portion of the arbitration costs. L. Defrenzo Decl. ¶ 6; C. Defrenzo Decl. ¶ 7; S. Dalie Decl. ¶ 23; R. Dalie Decl. ¶ 5.

Plaintiffs have also tendered copies of their signed Purchase Agreements. Declaration of Paul Stevens in Opp'n to Defs' Mot. ("Stevens Decl.") ¶¶ 5-6, Ex. C-D. The texts of these agreements appear identical to that of former plaintiff Desouza, which the court considered in resolving the prior motion to dismiss or stay pending arbitration. Each of the Purchase Agreements tendered have been signed and initialed by the plaintiffs in various places in the documents. See id.

In each Purchase Agreement, there is a section titled, "Post-Closing Arbitration of Disputes." Id. at 10. That section contains the following provision:

> e. Joinder. The parties may join other parties as provided in the rules except that you may not join your claims against us with the claims of any other homeowners. The parties may include our subcontractors and suppliers in the arbitration to the extent they involve your claims.

Id. at 11 (typeface altered from original all-caps). In opposing the defendants' June 2008 Motion to Compel Arbitration, the plaintiff argued that this provision rendered the arbitration agreement unconscionable, which the court rejected as contrary to California law. Order, Oct. 8, 2008 at 14-15.

////

**II. STANDARDS**

2   **A.   Standard for Motion to Stay or Dismiss Pending Arbitration**

3        When confronted with a motion to stay or dismiss pending

4   arbitration, the court must first determine if a valid arbitration

5   agreement bars the plaintiffs claims. <u>Sparling v. Hoffman Const.</u>

6   <u>Co., Inc.</u>, 864 F.2d 635, 638 (9th Cir. 1988). If that is the case,

7   the court has discretion to either stay or dismiss the case pending

8   arbitration. <u>Id.</u>; 9 U.S.C. § 3. The party seeking to enforce an

9   arbitration agreement has the burden to produce prima facie

10  evidence of the existence of a valid arbitration agreement.

11  <u>Rosenthal v. Great Western Fin. Sec. Corp.</u>, 14 Cal. 4th 394, 413-14

12  (1996). If it does so, the burden then shifts to the party opposing

13  arbitration to prove by preponderance of the evidence that the

14  arbitration agreement is unenforceable. <u>Id.</u>

15  **B.   Standard for Motion to Strike Pursuant to Federal Rule of**

16       **Civil Procedure 12(f)**

17       Rule 12(f) authorizes the court to order stricken from any

18  pleading "any redundant, immaterial, impertinent, or scandalous

19  matter." A party may bring on a motion to strike within 20 days

20  after the filing of the pleading under attack. The court, however,

21  may make appropriate orders to strike under the rule at any time

22  on its own initiative. Thus, the court may consider and grant an

23  untimely motion to strike where it seems proper to do so. <u>See</u> 5A

24  Wright and Miller, <u>Federal Practice and Procedure</u>: Civil 2d ' 1380.

25       Motions to strike are generally viewed with disfavor, and will

26  usually be denied unless the allegations in the pleading have no

possible relation to the controversy, and may cause prejudice to one of the parties. <u>See</u> 5A C. Wright & A. Miller, <u>Federal Practice and Procedure</u>: Civil 2d ' 1380; <u>see</u> <u>also</u> <u>Hanna v. Lane</u>, 610 F. Supp. 32, 34 (N.D. Ill. 1985). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. <u>See</u> 5A Wright & Miller at ' 1380.

### III. ANALYSIS

Defendants move to strike the class allegations and have the court compel arbitration on the grounds that there are arbitration agreements contained in the Purchase Agreements, which include provisions prohibiting plaintiffs from joining their claims with others. Defendants argue that the court has previously determined that the arbitration agreements are valid and enforceable and, as such, plaintiffs cannot now pursue their claims on behalf of a putative class. For that reason, defendants contend that the court must strike the class allegations and order the plaintiffs to participate in arbitration.

Plaintiffs dispute this on two main grounds. First they argue that the court has ordered plaintiffs to bring a motion for class certification and therefore the law of the case doctrine precludes granting defendant's motion. Second, they argue that the arbitration agreements are unconscionable and unenforceable. For the reasons stated herein, the court grants the motion to compel arbitration and grants in part the motion to strike.

## A. Law of the Case Doctrine

The parties each rely on the law of the case doctrine as support for their respective positions. "Under the 'law of the case' doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997)(citing Thomas v. Bible, 983 F.2d 153, 154 (9th Cir.), cert. denied, 508 U.S. 951 (1993)). Generally speaking, before reconsideration may be granted there must be a change in the controlling law or facts, the need to correct a clear error, or the need to prevent manifest injustice. Id. Failure to apply the law of the case without one of these factors being present would constitute an abuse of the court's discretion. Id.

Plaintiffs argue that the court has ordered plaintiffs to move for class certification in order to resolve certification issues prior to ordering the parties to arbitration, and thus under the law of the case doctrine the court cannot rule on defendants' motion without first ruling on plaintiffs' anticipated class certification motion. This argument is not compelling. As the court explained in its October 2008 order, the purpose for resolving class certification issues prior to ordering the parties to arbitration was for the practical purpose of determining which class members' "claims are subject to arbitration under the FAA and whether any differences in the class members' arbitration agreements warrant certification of subclasses." Order, Oct. 8, 2008 at 18, citing Sanders v. Kinko's Inc., 99 Cal. App. 4th 1106,

1109 (2002). Obviously, if none of the home purchasers included in the putative class may pursue their claims as a class, this practical concern is resolved. Were the court to adopt the plaintiffs' proposed approach, the court would be required to deny defendants' motion, only to consider the same arguments in the context of defendants' likely opposition to plaintiffs' anticipated motion for class certification. This rigidity serves no apparent purpose and certainly in not required under the law of the case doctrine.

Defendants, on the other hand, argue that the plaintiffs are precluded under the law of the case from attempting the relitigate the issue of the unconscionability of the plaintiffs' Purchase Agreements, which are identical to that considered by the court in resolving the motion to compel arbitration brought against former plaintiff De Souza. While this argument has superficial appeal, the reality is that plaintiffs could have pursued their suit as a new suit rather than an amendment of De Souza's suit. The plaintiffs currently in the case have not litigated the issue of the unconscionability of the Purchase Agreements, including not having tendered prior evidence on it. As such, the court is not compelled to disregard their arguments put forth in opposition to the instant motion, nor to consider them under a motion for reconsideration standard.[1] See Alexander, 106 F.3d at 876.

---

[1]This question is distinct from whether plaintiffs' counsel acted improperly in representing to the court that substitution of plaintiffs claims would require no change to defendants' "analysis of the case or defenses claimed." Reply in Support of Mot. for

**B.    Unconscionability of the Arbitration Agreements**

As the court set forth in its prior order, in order to be unenforceable due to unconscionability, an agreement must be both procedurally and substantively unconscionable. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). The court considers element each in turn.

**1.    Procedural Unconscionability**

Procedural unconscionability is marked by oppression (one party does not have a meaningful opportunity to negotiate the contract's terms) and surprise (the terms of the contract are hidden). Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir. 2003) (applying California law).[2] Here, plaintiffs contend that the arbitration agreements are procedurally unconscionable because they could not meaningfully negotiate their

---

Leave to File a Third Amended Compl. at 2. This conduct may be grounds for sanctions, but should not alter the manner in which the court considers the plaintiffs' evidence.

[2]In their opposition, plaintiffs attribute the following statement to the court, representing that it was included in the court's October 2008 order: "Courts have appeared willing to imply an imbalance of bargaining power between a home developer and an individual home buyer. Pardee Construction Co. v. Superior Court, 100 Cal. App. 4th at 1087; Thompson v. Toll Dublin, LLC, 165 Cal. App. 4th at 1373." Pls.' Opp'n to Defs.' Mot. to Strike the Class Allegations and Compel Arbitration at 7:8-10. This sentence does not appear in the court's order. In fact, this statement mischaracterizes the holdings of Pardee and Thompson, which the court described in its October order. See Order, Oct. 8, 2008 at 10-11. Plaintiffs' counsel are reminded of their duty to not make misrepresentations to the court and are strongly advised to refrain from further such occurrences or else face sanctions. See Local Rule 83-180(e) (requiring counsel to comply with the American Bar Association's Model Rules of Professional Conduct where applicable); ABA Model Rules of Prof'l Conduct R. 3.3 (describing duty of candor to the tribunal).

terms and because the arbitration rule were not disclosed within the document but referred the purchaser to the rules of the arbitration service provider. The court considers this second argument first.

### a. Surprise

As described in its October 2008 order, plaintiffs' Purchase Agreements were fourteen pages long, one page of which was the signature page.[3] Three pages of the contract are devoted to describing arbitration, including the rules and procedures governing it. It included provisions as to who will conduct the arbitration, location of arbitration, remedies available, application to small claims, fee allocation, statute of limitations, and resolution of rule conflicts, among several other topics. <u>See</u> Order, Oct. 8, 2008 at 4-5. It also provides that "claims shall be resolved in accordance with the construction industry arbitration rules of the AAA. . . ." Stevens Decl. ¶¶ 5-6, Ex. C-D (Purchase Agreement at 10). Because these rules were not set forth in the agreement, plaintiffs argue, the element of surprise is met.

The cases on which plaintiffs rely do not support the plaintiffs' contention. In <u>Fitz v. NCR Corp.</u>, 118 Cal. App. 4th 702, 721 (2004), the court found an arbitration agreement procedurally unconscionable as it applied to plaintiff, who had

---

[3]As stated *supra*, the texts of the plaintiffs' Purchase Agreements are identical to that of former plaintiff De Souza, which the court described in detail in its October 2008 order. <u>See</u> Stevens Decl. ¶¶ 5-6, Ex. C-D.

been an employee of defendant. There, during plaintiff's tenure, defendant had sent its employees a brochure outlining a new arbitration policy the defendant employer had adopted. Id. at 708. The brochure was described as "a useful overview" of the policy and encouraged employees to read the entirety of the policy, which could be obtained from human resources. Id. at 722. The brochure informed the reader that there were limited exceptions to the arbitration agreement, but those were "buried in the fine print of a footnote" and the brochure failed to mention the arbitration policy's discovery rules, which were unfavorable to employees. Id. at 722-23. Employees were deemed to have agreed to the policy if they continued working for defendant for one month after the inception of the policy. Id. at 708. The court held that this was procedurally unconscionable and that surprise was present because the employee needed to consult an outside source to determine the terms of the arbitration agreement. Id. at 722-23.

The evidence in the instant case does not compel a similar result. Here, the terms of the arbitration agreement were described in plain language over three of the fourteen pages of the Purchase Agreement. Exceptions to the arbitration requirement were also set forth in plain language, in the text of the agreement. Unlike the agreement at issue in Fitz, the document given to plaintiff was not a cursory overview of the arbitration agreement. See Fitz, at 722-23. Most compellingly, California courts have consistently held that it does not constitute "surprise" in an unconscionability analysis for an arbitration agreement to incorporate another

document by reference. See, e.g., Chan v. Drexel Burnham Lambert, Inc., 178 Cal. App. 3d 632, 641 (1986) (collecting twenty-one cases).[4] Accordingly, plaintiffs have not shown that there was surprise for plaintiffs in agreeing to arbitration through the Purchase Agreements, necessary for a finding of procedural unconscionability.

### b. Oppression

Next, the court considers whether the evidence tendered by plaintiffs demonstrates oppression. Plaintiffs have tendered evidence, in the form of their declarations, that they were not given the opportunity to negotiate the terms of the Purchase Agreement, that they do not have "professional experience" purchasing homes, and that the Purchase Agreements were pre-printed forms that were presented to them. L. Defrenzo Decl. ¶¶ 2-4; C. Defrenzo Decl. ¶¶ 3-4; S. Dalie Decl. ¶¶ 11-13, 19;R. Dalie Decl. ¶¶ 2-3. Some of the plaintiffs have also declared that they were instructed to complete the forms quickly. C. Defrenzo Decl. ¶ 6; S. Dalie Decl. ¶ 19. Plaintiff Steward Dalie declared that he did not have an attorney present at the time he executed the Purchase Agreement. S. Dalie Decl. ¶ 12.

---

[4]Despite plaintiffs' contention to the contrary, Chan does not support their argument. There, the court held that it was procedurally unconscionable for an arbitration agreement to be incorporated by reference into another contract, where the contract did not refer specifically to the document that contained the arbitration provision. Chan, 178 Cal. App. 3d at 643. That is plainly not similar to the arbitration agreements at issue here, which were set forth in over almost a quarter of the text of the Purchase Agreement.

Under California law, this is some evidence of oppression, although it is of the type that California courts have considered inadequate evidence of oppression. The California court of appeals reached this conclusion in a case with similar facts. In <u>Trend Homes, Inc. v. Superior Court</u>, 131 Cal. App. 4th 950, 954 (2005), plaintiffs were a group of homeowners who sued the developer who had built their homes. Their purchase agreements contained arbitration provisions, but plaintiffs tendered evidence that they were unsophisticated, being first-time home-buyers, that the arbitration clause was not explained to them, that they were not aware that it was negotiable, and that they were not aware that it had been included in the purchase agreements. <u>Id.</u> at 955. The court of appeals reversed the trial court's determination that this was sufficient evidence of oppression in the context of the unconscionability analysis. <u>Id.</u> at 957-58.

The court of appeals based its holding on several considerations. First, there was "no evidence that [plaintiffs] attempted to negotiate the provision and were rebuffed, or that they had no meaningful choice but to agree to the provision." <u>Id.</u> at 958. Second, there was no evidence as to whether the provision was included in every purchase agreement, which would be some evidence that the contract was adhesive. <u>Id.</u> at 958-59. Further, although most of the plaintiffs were first-time home buyers, "they offered no evidence that they lacked the education, experience, or sophistication necessary to understand the contracts." <u>Id.</u> at 959. They also had tendered no evidence that they were not permitted the

14

opportunity to read the contract carefully or to consult with a lawyer if they desired. <u>Id.</u> Finally, there was no evidence of a lack of similarly priced housing in the area, which would indicate the home buyers' lack of choice to accept the terms of the purchase agreement. <u>Id.</u>, citing <u>Woodside Homes of Cal., Inc. v. Superior Court</u>, 107 Cal. App. 4th 72 (2003).[5]

There is a similar absence of evidence of oppression tendered here. Although plaintiffs have declared that they did not have the opportunity to negotiate the Purchase Agreements' terms, there is no evidence that they attempted to negotiate but were rebuffed. Although plaintiffs have declared they had no "professional experience" in home buying, <u>see</u>, <u>e.g.</u>, L. Defrenzo Decl. ¶ 2, there is no evidence that they were uneducated or otherwise unable to understand the terms of the agreements, or even that they were first-time home purchasers. Additionally, there is no evidence regarding the availability of similarly priced housing in the area, from which the court may evaluate whether plaintiffs could realistically walk away from the negotiations. Although plaintiff Stewart Dalie declared that he did not have a lawyer present, there is no evidence that he was prevented from doing so by circumstances created by defendants.

Nevertheless, there is some evidence that defendants required

---

[5]While the Court of Appeals' decision appears to this court to ignore how home purchases are effectuated in the real world, this court is not writing on a blank sheet and in determining California law, is obliged to recognize California Court of Appeals' decisions in the absence of other evidence. <u>West v. Amer. Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940).

plaintiffs to review the contract's terms "quickly." C. Defrenzo

Decl. ¶ 6; S. Dalie Decl. ¶ 19. This alone does not establish

oppression, because it is unclear whether defendants actually

prevented plaintiffs from reviewing the contracts in the time that

they desired.[6] Nonetheless, it constitutes some evidence of

oppression. See Trend Homes, 131 Cal. App. 4th at 959. Even so,

plaintiffs have not shown that the agreements were procedurally

unconscionable, as they have only shown minimal evidence of

oppression and no evidence of surprise. This does not suffice to

meet their burden. Ingle, 328 F.3d at 1171.

**2.  Substantive Unconscionability**

Under California law, a contract is substantively

unconscionable when its terms are so one-sided as to shock the

conscience. Kinney v. United HealthCare Serv., Inc., 70 Cal. App

4th 1322, 1330, 1332 (1999). Here, plaintiffs contend that the

arbitration agreement is substantively unconscionable because it

contains a class action waiver and because it does not require

defendants to arbitrate all of their claims or claims that they

would be likely to bring.

**a.  Effect of the Class Action Waiver**

As the court described in its October 2008 order, under

California law class action waivers alone do not render an

---

[6]If this court's experience in purchasing homes is any guide, the manner of execution is that the seller's agent simply has the purchaser sign or initial a whole slew of papers in a manner which suggests that the purchaser has to sign them as a matter of routine.  Again, however, this court's own experience is not the test.

arbitration agreement unconscionable. <u>Discover Bank v. Superior</u>
<u>Court</u>, 36 Cal. 4th 148, 162-63 (2005); <u>Shroyer v. New Singular</u>
<u>Wireless Servs., Inc.</u>, 498 F.3d 976, 983 (9th Cir. 2007) (applying
California law). Instead, they are unconscionable in a narrow class
of cases where: 1) the plaintiffs are consumers, 2) the waiver is
in an adhesive contract, 3) the dispute between the parties would
typically involve a small amount of damages, and 4) the defendant
is alleged to have carried out a scheme to systematically defraud
a large number of consumers out of individually small sums of
money. <u>Discover Bank</u>, 36 Cal. 4th at 162-63. This rule is
understood to apply to contracts for relatively inexpensive
consumer goods or services, such as credit card agreements or
agreements for Internet or cellular phone service. <u>See</u> <u>id.</u>;
<u>Shroyer</u>, 498 F.3d at 983-85; <u>see also</u> <u>Omstead v. Dell, Inc.</u>, 533
F. Supp. 2d 1012, 1033, 1037 (applying California law and holding
this rule inapplicable to claims arising out of sale of "high-end
electronics," because the amounts in controversy were not so
trivial as to discourage potential plaintiffs from bringing suit).[7]

Here, plaintiffs contend that this rule applies because there
is evidence that the amount in controversy is small and defendants
are alleged to have engaged in a scheme to defraud customers. The
court cannot agree that the rule applies. As described in section

---

[7]Where, as here, plaintiffs assert that the cost of
arbitration suffices to prevent them going forward, the issue
should be whether the combined provisions in effect deprive
plaintiffs of any remedy. Again, however, I do not write on a
clean sheet.

III.A.1, *supra*, plaintiffs have not shown that the Purchase Agreements are properly characterized as adhesive contracts under California law.

Second, plaintiffs have not shown that the amount in controversy is so small as to resemble that at issue in a case involving a relatively inexpensive consumer good. Plaintiffs have tendered evidence that they paid between $500 and $600 for title insurance. Stevens Decl. Ex. F-G. They allege that only a portion of this constituted the purported kickback to defendants, see TAC ¶ 61, and therefore, they argue, the total amount in controversy is less than $200 per homebuyer. This approach fails because plaintiffs have also seek to recover damages well in excess of that portion of the title insurance. Specifically, they seek treble damages for their first cause of action and punitive and exemplary damages. See TAC Prayer for Relief. Given this, the court cannot conclude that plaintiffs' suit involves the "predictably. . .small amounts of damages" that would render the class action waiver unenforceable. See Discover Bank, 36 Cal. 4th at 162-63. See footnote, *supra.*

Because plaintiffs have not shown that their suit falls into the narrow exception described by the Discover Bank court, the court cannot conclude that the arbitration agreement's class action waiver alone renders the arbitration agreement substantively unconscionable.

**b.    Mutuality of the Arbitration Agreement**

Plaintiffs    argue    that    the    arbitration    agreement    is

18

substantively unconscionable because it does not require defendants to arbitrate claims for liquidated damages and does not require defendants to arbitrate claims that defendants would be likely to bring. Plaintiffs' arguments are contrary to California law.

As the court described in its October 2008 order, an arbitration agreement is substantively unconscionable if it requires only one party to arbitrate or only included in its ambit the types of claims that only that party would be likely to bring. Armendariz, 24 Cal. 4th at 116-18; Kinney, 7 Cal. App. 4th at 1332; Stirlin v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1536 (1997). The court concludes, as it did in its October 2008 order, that this hallmark of substantive unconscionability is not present here.

First, although the agreements exempt from arbitration claims for liquidated damages and only expressly describe claims for liquidated damages as brought by defendants, this does not render the agreement unconscionably one-sided. As the California Supreme Court explained, an arbitration agreement need not contain perfect mutuality on each provision but rather need only possess a "modicum of bilaterality." Armendariz, 24 Cal. 4th at 117-18. For example, in Armendariz, the court held that the arbitration agreement at issue was unfairly one-sided because it required all of an employee's claims regarding his termination to be arbitrated but did not require the employer similarly to arbitrate claims arising from the employee's termination. Id. at 120; see also Flores v. Transamerica Homefirst, Inc., 93 Cal. App. 4th 846, 852-55 (2001) (arbitration agreement substantively unconscionable because it did

not require defendant to arbitrate any claims, but required plaintiff to arbitrate all claims); Pardee, 100 Cal. App. 4th at 1092 (same). Under the Armendariz rule, the lack of mutuality in the liquidated damages provision alone does not render the agreement substantively unconscionable.

The same is true for disputes arising after the closing. See Stevens Decl. Ex. C-D at 10-12. As the court explained in its October 2008 order, the Purchase Agreements provide that post-closing arbitration is required for any dispute arising out of the transaction, regardless for the type of claim, except for claims of liquidated damages. This demonstrates at least the modicum of bilaterality required under Armendariz, 24 Cal. 4th at 117-18. See also Stirlin, 51 Cal. App. 4th at 1536. The mutuality in the arbitration agreement distinguishes this case from Thompson, 165 Cal. App. 4th at 1373, where the court held that the agreement was substantively unconscionable. There, the agreement was described only in terms of Title 7 of the California Civil Code, which deals exclusively with construction defects. Id. As such, "defendants, as the builder and seller of plaintiffs' homes, would have no conceivable reason to institute legal proceedings against a homeowner after escrow closed, but virtually every claim the homeowners might raise against [the builder and seller] would be subject to arbitration." Id., citations omitted.

Here, there is not a similar limitation on the types of disputes that must be arbitrated. Although plaintiffs contend that it is unlikely that defendants would bring any post-closing claims

against homeowners, the arbitration provision here is drafted so broadly as to not necessarily only implicate homeowners' claims. The Post-Closing Arbitration provision explains,

> a. Agreement to Arbitrate. . . . Except for disputes regarding liquidated damages as set forth above in the pre-closing arbitration of disputes provision, any controversy, claim, cause of action, liability or dispute ("claims") arising out of or in any way related to this agreement, your property, home, community, death, bodily injury and/or defective design or construction, including without limitation, claims for breach of contract, negligence, nuisance, statutory violation, misrepresentation, and/or fraud, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act (Title 9 of the United States Code).

Stevens Decl. Ex. C-D at 10. If, as plaintiffs allege, defendants were developers of a large number of homes in a neighborhood, it is not unrealistic that they may have claims against homeowners relating to the homeowners' "property, home, [or] community," including, as defendants describe, claims relating to nuisance or easements.[8]

Therefore, because there is no evidence of substantive unconscionability and only minimal evidence of procedural unconscionability, the arbitration agreements are enforceable.

\\\

---

[8]Declarations of the plaintiffs that the fee payment provisions of the arbitration agreement would cause them to not pursue their claims in arbitration is not evidence of substantive unconscionability. See Trend Homes, 131 Cal. App. 4th at 959-60; see also Boghos v. Certain Underwriters at Lloyd's of London, 36 Cal. 4th 495, 505-508 (2005) (holding that requiring one party to pay fees and costs associated with arbitration did not constitute substantive unconscionability and that the contrary rule employed by some courts of appeal was only applicable in the context of employment disputes).

## C.   Striking the Class Allegations

Plaintiffs mention briefly in their opposition to defendants'
motion that discovery is needed prior to the court's determination
of the enforceability of the Purchase Agreements:

> [U]nconscionability is only one of many theories which
> could render a contractual provision void of
> unenforceable (i.e., waiver, duress, public policy,
> etc.). Indeed, the enforceability of a contractual
> provision, and whether a breach has occurred, is a
> matter that cannot be determined at the pleading stage,
> prior to any discovery.

Pls.' Opp'n to Defs.' Mot. to Compel Arbitration and Strike Class
Allegations at 19:5-7. Plaintiffs, however, have not alleged or
otherwise indicated that facts exist that would form the basis for
holding the Purchase Agreements and the arbitration agreement
therein unenforceable. Moreover, many of these bases for
invalidating the agreements appear not to require discovery, as
evidence for them would be under plaintiffs' control, including
evidence of duress, menace, undue influence, or mistake. See Cal.
Civ. Code § 1689. Finally, to the extent that this brief argument
is intended to suggest that the entire Purchase Agreement is
unenforceable, under the F.A.A. that determination must be made by
the arbitrator. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S.
440, 444-46 (2006); Sanford v. Memberworks, Inc., 483 F.3d 956, 963
(9th Cir. 2007); Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1263-
64 (9th Cir. 2006). This approach is consistent with the purpose
of the F.A.A. generally, which is the "unmistakably clear
congressional purpose that the arbitration procedure, when selected
by parties to a contract, be speedy and not subject to delay and

obstruction in the courts." <u>Prima Paint Corp. v. Flood & Conklin</u> <u>Mfg. Co.</u>, 388 U.S. 395, 403-404 (1967) citing 9 U.S.C. § 4. The plaintiffs have not offered an adequate reason to delay arbitration in favor of discovery in this case.

As the court described in its October 2008 order, the arbitration agreement applies to all of plaintiffs' claims except their prayer for injunctive relief under California's Unfair Competition Law and may be enforced by all of the defendants, despite Del Webb California being the only defendant who was a signatory to the agreement. Order, Oct. 8, 2008 at 16-17. It is thus required, despite the court's misgivings, to order the parties to arbitration on all arbitrable claims and stay the claim for injunctive relief. <u>See generally</u> 9 U.S.C. § 3; <u>see also</u> <u>Jope v.</u> <u>Bear Stearns & Co.</u>, 632 F. Supp. 140, 144 (N.D. Cal. 1985) ("Where plaintiffs assert both arbitrable and nonarbitrable claims, district courts have . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants." (internal citations omitted)).

Because the arbitration agreements are valid and enforceable and because they contain a provision prohibiting plaintiffs from joining claims against defendants with those of other homeowners, plaintiffs are barred from proceeding against defendants on their claims for damages in a class action suit. Where an allegation cannot be a basis for recovery as a matter of law, the court may strike it. <u>See</u> Fed. R. of Civ. Proc. 12(f) (court may strike any "immaterial . . . matter"); <u>see also</u> <u>Livingston v. Assoc. Fin.,</u>

*Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) (adopting this approach where enforceable arbitration agreement precluded plaintiffs from bringing class claims); *Jenkins v. First Amer. Cash Advance of GA, LLC*, 400 F.3d 868, 878-89 (11th Cir. 2005) (same). Here, plaintiffs' claims for injunctive relief are not subject to arbitration and are therefore not subject to the provision in the arbitration agreement prohibiting joinder. *See* Stevens Decl. Ex. B-C (Purchase Agreements at 11) (joinder provision, located under "Post-Closing Arbitration of Disputes"); *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal.4th 303, 316 (2003) (claims seeking injunctive relief not arbitrable). Therefore, for the sake of clarity for the court and the parties as the litigation proceeds, the court strikes the class allegations except as to the prayer for injunctive relief under their sixth cause of action of the Third Amended Complaint.

### IV. CONCLUSION

For the reasons stated herein, defendants' motion to strike the class allegations of the Third Amended Complaint is GRANTED in part. Those allegations are STRICKEN, except as to plaintiffs' prayer for injunctive relief deriving from their sixth cause of action in the Third Amended Complaint.

The parties are ORDERED to arbitrate the disputes at issue in this case except as to plaintiffs' claim for injunctive relief under the California Unfair Competition Law, consistent with the court's October 8, 2008 order. This action is STAYED pending resolution of arbitration. The parties SHALL file a request to lift

1  the stay promptly upon the resolution of arbitration.[9]

2       The status conference currently set for May 4, 2009 is

3  VACATED.

4       IT IS SO ORDERED.

5       DATED:  April 28, 2009.

6

7

8                                    _____
                                     LAWRENCE K. KARLTON
9                                    SENIOR JUDGE
                                     UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25       [9]If, as plaintiffs have asserted, arbitration is prohibitive,
    so that they cannot proceed, they should so inform the court and
26  indicate their future course.