1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9

STEWART A. DALIE,
10 individually and on
behalf of all others
11 similarly situated,

12                                   NO. CIV. S-08-337 LKK/GGH
            Plaintiff,
13
      v.
14                                   O R D E R
PULTE HOME CORPORATION,
15 DEL WEBB HOMES; PULTE
MORTGAGE; DEL WEBB HOME
16 FINANCE; DEL WEBB MORTGAGE
CORPORATION; and DOES 1-1,000,
17 inclusive,

18         Defendants.

19 _____/

20      Plaintiffs are alleged to be homebuyers who have brought suit

21 against defendants on the basis of the latter's purportedly

22 unlawful compensation arrangement. On April 28, 2009, the court

23 granted defendant's motion to strike the class allegations from the

24 complaint, holding that the class action waiver contained in the

25 plaintiffs' valid arbitration agreements was enforceable and barred

26 the plaintiffs from proceeding as a class. It is this order that

1

1  plaintiffs request the court to certify for interlocutory appeal.

2  **I. BACKGROUND**

3  The court described the plaintiffs' allegations in detail in

4  its October 9, 2008 order. Briefly stated, plaintiffs allege that

5  defendant Marquette Title Insurance was the "captive" reinsurer of

6  the remaining defendants, a feature of which was an allegedly

7  improper, undisclosed fee-splitting arrangement between them.

8  Shortly after the case's removal to this court, defendants

9  moved to dismiss or stay the case pending arbitration. The court

10  reviewed the arbitration agreements and concluded that they are

11  enforceable. Nevertheless, because the case was pled as a class

12  action, arbitration could not be ordered immediately. Instead,

13  following California authority, the court determined that it was

14  appropriate to delay ordering the parties to arbitration until the

15  class certification issues were resolved, because "[b]ased on that

16  ruling, the court may then determine who must be compelled to

17  participate in arbitration, including whether or not there may be

18  a subclass whose disputes do not require arbitration." Order, Oct.

19  9, 2008 at 18.

20  Plaintiffs then, with leave of court, filed an amended

21  complaint replacing the named plaintiffs. Defendants again moved

22  to dismiss this complaint. In that motion, defendants raised for

23  the first time that the class action waivers included in the

24  arbitration agreements required the court to strike the class

25  ////

26  ////

2

1   allegations, insofar as the plaintiffs sought damages.[1] The court

2   again analyzed the entirety of the arbitration agreements and

3   concluded that they were not unconscionable under California law.

4   The court then considered whether the class actions waivers

5   themselves were unenforceable and concluded that they were not, as

6   under California law a class action waiver is only unenforceable

7   in a narrow set of circumstances involving adhesive consumer

8   contracts. See Discover Bank v. Superior Court, 36 Cal. 4th 148,

9   162-63 (2005); Shroyer v. New Singular Wireless Servs., Inc., 498

10  F.3d 976, 983 (9th Cir. 2007) (applying California law).

11  Accordingly, the court struck the class allegations (except as to

12  injunctive relief) and ordered the case stayed pending the

13  conclusion of arbitration.

## II. STANDARD

15      Generally, a party may seek review of a district court's

16  rulings only after a final judgment has been entered. In re. Cement

17  Antitrust Litigation, 673 F.2d 1020, 1027 (9th Cir. 1982). In rare

18  circumstances, however, the district court may certify an order for

19  interlocutory review under 28 U.S.C. § 1292(b). See id.

20  Certification for appeal is appropriate where the "order involves

21  a controlling question of law as to which there is substantial

22  ground for difference of opinion" and where "an immediate appeal

23  from the order may materially advance the ultimate termination of

24  the litigation." 28 U.S.C. § 1292(b). "[I]n order for a question

25

26      [1]The court had previously determined that plaintiffs' claims
seeking injunctive relief were not arbitrable.

3

1  to be 'controlling'" it must be shown that "resolution of the issue

2  on appeal could materially affect the outcome of litigation in the

3  district court." In re Cement Antitrust Litigation, 673 F.2d at

4  1026. The issue need not be "dispositive of the lawsuit in order

5  to be regarded as controlling," but it cannot be collateral to the

6  basic issues of the case. United States v. Woodbury, 263 F.2d 784,

7  787 (9th Cir. 1959).

## III. ANALYSIS

9      The plaintiffs seek certification of the court's April 28,

10  2009  for  interlocutory  appeal  on  a  single  issue:  "Is  the

11  arbitration agreement, or specifically the class action waiver,

12  unconscionable?"  Pls.'  Application  for  Certification  Under  28

13  U.S.C. § 1292(b). Although they have phrased it as such, in their

14  application plaintiffs only address the unconscionability of the

15  class  action  waiver,  not  the  arbitration  agreements  in  their

16  entireties, and so the court considers the application only with

17  regards to that narrow issue.

18  **A.   Whether  the  Question  Presented  Represents  a  Controlling**

19  **    Question of Law**

20      The certification requirements for an interlocutory appeal are

21  "(1) that there be a controlling question of law, (2) that there

22  be substantial grounds for difference of opinion, and (3) that an

23  immediate appeal may materially advance the ultimate termination

24  of the litigation." In re Cement Antitrust Litigation, 673 F.2d at

25  1026. The first limitation, that interlocutory appeals be permitted

26  only where there is a controlling question of law at issue, intends

4

1 to capture those "exceptional situations in which allowing an

2 interlocutory appeal would avoid protracted and expensive

3 litigation." Id., citing United States Rubber Co. v. Wright, 359

4 F.2d 784, 785 (9th Cir. 1966) (per curium) and Milbert v. Bison

5 Labs., 260 F.2d 431, 433-35 (3rd Cir. 1958). To be controlling, the

6 issue must be one that "could materially affect the outcome of

7 litigation in the district court," rather than simply shortening

8 the duration of the litigation or relating to a collateral issue.

9 Id. at 1026-27. Despite defendant's reliance on out of circuit

10 authority, the Ninth Circuit Court of Appeals has never embraced

11 the rule that only pure legal questions are controlling questions

12 of law under § 1292(b). See id.; Woodbury, 263 F.2d at 787; Wright,

13 359 F.2d at 785.

14    Here, the court is persuaded that the issue of the

15 enforceability of the class action waivers is a controlling

16 question of law in this case. Whether plaintiffs may pursue their

17 claims on behalf of a class will affect the course of the

18 litigation entirely. If the waivers are enforceable, as the court

19 determined, the suit is stayed pending arbitration. Plaintiffs, in

20 opposition to defendants second motion to dismiss, represented to

21 the court that they would be unable to proceed in the suit in that

22 circumstance. See, e.g., Decl. of L. Defrenzo In Opp'n to Defs.'

23 Mot. for Summ. J. ¶ 6; Decl. of S. Dalie In Opp'n to Defs.' Mot.

24 for Summ. J. ¶ 23. On the other hand, if the class action waivers

25 are determined to be unenforceable, the case would proceed in this

26 court for injunctive relief as well as damages, beginning with a

5

1 determination of the appropriateness of class certification under

2 the Federal Rules. In short, the question is controlling because

3 it will determine what claims are litigated in this court and,

4 practically, whether the plaintiffs will continue to pursue a

5 majority of their claims in any forum.

6 **B.     Whether There Are Substantial Grounds for a Difference of**

7 **        Opinion on the Issue**

8       The California Supreme Court in <u>Discover Bank v. Superior</u>

9 <u>Court</u>, 36 Cal. 4th 148, 162-63 (2005), explained the narrow

10 circumstances in which a class action waiver in an arbitration

11 agreement is unenforceable. A class action waiver is unconscionable

12 where, "1) the plaintiffs are consumers, 2) the waiver is in an

13 adhesive contract, 3) the dispute between the parties would

14 typically involve a small amount of damages, and 4) the defendant

15 is alleged to have carried out a scheme to systematically defraud

16 a large number of consumers out of individually small sums of

17 money." Order, Apr. 28, 2009 at 17, citing <u>Discover Bank</u>, 36 Cal.

18 4th at 162-63.

19      The court concluded that plaintiffs had not shown that they

20 met this standard for two reasons. First, the plaintiffs had not

21 shown that the waivers existed in the context of an adhesive

22 contract. The court reached this conclusion upon application of the

23 factually similar case <u>Trend Homes, Inc. v. Superior Court</u>, 131

24 Cal. App. 4th 950, 954 (2005). Second, the court observed that

25 plaintiffs had not shown that a "small" amount of damages was at

26 issue for each plaintiff, particularly since plaintiffs sought

6

1   treble, punitive, and exemplary damages. Based on the authorities

2   construing Discover Bank, this did not appear to be properly

3   characterized a small amount of damages.

4       The court acknowledges, however, that there are substantial

5   grounds for a difference of opinion on this issue, particularly on

6   the question of what constitutes a "small" amount of damages. In

7   Discover Bank, $29 fees were at issue. Discover Bank, 36 Cal. 4th

8   at 154. Aside from Discover Bank, there appears no clear rule

9   defining this limitation by California courts. In Cohen v. DirecTV,

10  Inc., 142 Cal. App. 4th 1142, 1452 (2006), the court held that

11  hidden fees in a television service contract totaling $1000 met the

12  Discover Bank standard. This appears the outer limit of the

13  definition of "small," by most courts' application of the rule. See

14  Shroyer v. New Singular Wireless Servs., Inc., 498 F.3d 976, 983

15  (9th Cir. 2007) (applying California law and holding that

16  "individual damages in the hundreds of dollars [are an] objectively

17  small amount"); Gatton v. T-Mobile USA, Inc., 152 Cal. App. 4th

18  571, 587 (2007) ($200 in individual damages was "small"); Aral v.

19  EarthLink, Inc., 134 Cal. App. 4th 544 (2005) (individual damages

20  ranged from $40-$50 and met the Discover Bank standard); see also

21  Omstead v. Dell, Inc., 533 F. Supp. 2d 1012, 1033, 1038 (individual

22  damages of $1500 were not small amounts under the Discover Bank

23  rule); Steiner v. Apple Computers, Inc., 556 F. Supp. 2d 1016, 1025

24  (N.D. Cal. 2008) (individual damages of $115 met the standard);

25  Stern v. Cingular Wireless Corp., 452 F. Supp. 1138, 1149 (C.D.

26  Cal. 2006) (individual damages were $9 and met the standard).

1   To the court's knowledge, the only case in which a court have

2  found damages for non-employment contracts[2] alleged to be greater

3  than $1000 to constitute "small" amounts is that of a federal

4  district court interpreting California law. See, e.g., Provencher

5  v. Dell, Inc., 409 F. Supp. 2d 1196, 1202-4 (C.D. Cal.2006)

6  (individual alleged damages of $1600). This offers the court

7  minimal instruction as to how the California Supreme Court would

8  rule on this issue.

9   Plaintiffs have demonstrated that there are significant

10 grounds for a difference of opinion on this question. Here,

11 plaintiffs allege approximately $200 in individual damages,

12 although they seek treble, punitive, and exemplary damages that may

13 result in their average individual damage award exceeding $1000.

14 However, the case law is not clear as to whether, under California

15 law, a individual damage award greater than $1000 results in the

16 claims not being of the type encompassed by the Discover Bank rule.

17 Although the Shroyer court indicated that this is the appropriate

18 interpretation of the "small" damage amount requirement, that

19 holding was based on a review of what damage amounts had been held

20 to meet the Discover Bank standard in each case, rather than a

21

22   [2]In cases arising under the Labor Code, the courts have held
that much greater amounts of damages meet the Discover Card
23 standard. See, e.g., Franco v. Athens Disposal Co., Inc., 171 Cal.
App. 4th 1277, 1295 (2009) (damages totaling $10,000 met this
24 standard). Employment discrimination cases, however, must meet a
more rigorous standard for enforcement of arbitration agreements
25 due to the California Supreme Court's acknowledgment of the public
policy concerns that require that the right to redress be
26 unwaivable in such suits. Gentry v. Superior Court, 42 Cal. 4th
443, 455-56 (2007).

1  bright-line limit having been expressed by any of the California

2  courts. In light of this, the court finds that there is a

3  substantial ground for difference of opinion as to whether the

4  plaintiffs' allegations meet the Discovery Bank standard such that

5  the class action waiver should be held unenforceable.

6  **C.   Whether Interlocutory Appeal Would Materially Advance**

7  **Termination of the Litigation**

8  Finally, an application for interlocutory appeal may only be

9  granted if the appeal would "materially advance the ultimate

10 termination of the litigation." 28 U.S.C. § 1292(b); In re Cement

11 Antitrust Litigation, 673 F.2d at 1026. That standard is met here.

12 At present, the case is stayed pending completion of arbitration.

13 Once arbitration is concluded (or if plaintiffs choose to settle

14 their arbitratable claims), the parties will then litigate the

15 issue of injunctive relief in this court. Only after a final

16 judgment on those claims may the plaintiffs seek by right appellate

17 review of the court's ruling striking the class allegations.

18 Reversal at that stage would result in litigation on the claims for

19 damages, which appear to include a great deal of factual overlap

20 with the claims for injunctive relief. Instead, granting the

21 application for interlocutory appeal will permit resolution of the

22 issue of the enforceability of the class action waivers at an early

23 enough stage in the litigation to avoid the possibility of two

24 significantly duplicative trials if the court's ruling is reversed.

25 Accordingly, this element of 28 U.S.C. § 1292(b) is met.

26 ////

1                        **IV. CONCLUSION**

2      For the reasons stated herein, the plaintiffs' application for

3  certification for interlocutory appeal is GRANTED.

4      IT IS SO ORDERED.

5      DATED:   June 9, 2009.

6

7

8  _____
   LAWRENCE K. KARLTON

9  SENIOR JUDGE
   UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                10